Good morning, Your Honors. May it please the Court, Rich Busse, Busse & Hunt, Portland, Oregon, for the Plaintiff Appellate, Holly Johnston, in this case for third-party interference by Defendant Kimberly-Clark with her employment relationship with her former law firm Banner & Witkoff. Under Oregon law, once there's evidence of an improper purpose through evidence of retaliatory intent, that raises a jury question on the question of improper purpose. The Court erred in requiring the plaintiff to prove improper purpose by disproving the claimed legitimate intent of the defendant. While that's one way of raising a jury question on improper purpose, you can do so also by inducing evidence directly of retaliatory intent, and here there was such evidence. Mr. Kappas was in charge of the pain pump litigation. When he learned of her suit, he contacted her law firm, said we can't have one of our outside attorneys suing Kimberly-Clark. Then he took a personal interest in seeing to it her suit would not stand. He solicited their assistance in setting up a meeting with her to cause her to settle her case. At that meeting, he suggested her case was not valuable, that she should settle it, and that because of the longstanding relationship with her law firm, if she did not, he would have to have a talk with her bosses, and this would have consequences for the plaintiff. Did anybody else other than the plaintiff hear that? I mean, I think her husband and a lawyer who was a lawyer and then another lawyer were present for that settlement at the conference. They were. And was there a declaration submitted by them? No. Was there any deposition from them? Is there anything other than her own statement regarding that? Her testimony about their conversation is what we have in the record to that effect, Your Honor. And is that enough? Certainly. The court below was not to weigh the evidence. The court was to view the evidence in the light most favorable to the plaintiff, and that was specific evidence that constituted a threat by Mr. Kappas to her employment by drawing in her employment relationship in the bargain at that particular time. So that afterwards, when they came to the point on February 11, 2010, where Mr. Kappas was not satisfied with the way negotiations went, in his letter to her attorney, he characterized her position as unreasonable and exceedingly disappointing. He cut off negotiations at that point, contacted her law firm as promised, expressed her displeasure, and a short time later she was terminated. Now, while we're at it. What evidence is there that anything Mr. Capes may have said to Mr. Cooperman, his friend and former colleague, I guess, is that correct, influenced the board's decision to fire your client? The evidence at the time, after the negotiations fail, is restricted to his admission that he expressed his disappointment. That's all they would admit to. During the period from December to that time, he, Mr. Cooperman, admitted that Mr. Kappas said that Mr. ---- said something to the effect, we can't have one of our outside attorneys suing us. Ms. Metrius said that she became aware of that statement. But in the meeting with the plaintiff, Mr. Kappas gave her a preview of what he would tell her firm. He said, I have a longstanding relationship and this will have consequences on our relationship. We can't have one of our outside attorneys suing us. A reasonable juror could conclude that he delivered the message to the firm that he promised in that meeting he would say. So while under Oregon law to establish ---- So you acknowledge you don't have anything more directly supporting that there was actual communication between Mr. Capes and Mr. Cooperman other than that? Other than that, that is it, Your Honor. We have timing as well. After the negotiations concluded on February 11th when Mr. Kappas cut them off, then he said several days later he made the contact with Mr. Cooperman, and it was just days before her March 1st termination and just after the February 24th e-mail to Vorey's opinion, which would have been February 25th or 26th, that the board met and voted to terminate her. So that was about two weeks after the ---- the termination of those negotiations. Under Oregon law to establish improper purpose, you don't need to also attack What should Kimberly Clark do? Pardon? Pardon you, Your Honor? Can you blame Kimberly Clark for not caring very much about this situation? Well ---- She's working for a law firm. The law firm represents Kimberly Clark. And she has a lawsuit against a wholly owned subsidiary, Kimberly Clark. That's correct, Your Honor. So you've got kind of a conflict there. Not so, Your Honor. We have a situation in which she sued IFLO in June of 2009. And Kimberly Clark acquired it. Acquired it later. Yeah. So the conflict or alleged conflict arose later, but there was a stated concern about an alleged conflict. There was a stated ---- I'm wondering if this goes to the point you were just trying to make before you just got a question about under Oregon law, you don't have to prove what? What is your point? Under Oregon law, you ---- if you ---- there are several ways of proving improper purpose. One is to adduce evidence of retaliatory intent directly, which I've reviewed the evidence that does that. But the court below required us to also disprove each claim legitimate intent of the defendant. The court agreed that we adduced evidence to call into question the black mark concern through evidence of the availability of motions in limine. But as to the other stated concern, the claim to conflict, there was evidence in the record that from Mr. Kappa's own actions and words, he admitted he did no research about it, didn't consult with anybody. When someone informed him that she had been walled off, he didn't object, he didn't ask any questions or do any research then either. In his deposition, he admitted that at that point he did not know whether that addressed his concern. If one doesn't know, how can one claim to hold a sincere belief about it? And when questioned about it, he retreated to his black mark concern. So from all of that, a reasonable juror could conclude that that belief was not sincerely held either. But what was missing from the Court's analysis below is that if you have evidence of a retaliatory intent, that alone creates a jury question on the improper-purpose issue. But the Court was focused on the other prong, and it was error for the Court to require the plaintiff, in addition to disprove each of the claim legitimate intents of the third party, and also it was error for the Court to require the plaintiff to do so by clear evidence that each claimed legitimate intent was objectively unreasonable. What is clear evidence? Is that like clear and convincing, the fraud standard? Is it preponderance? Is it an intermediate quantum of proof standard and objectively unreasonable? What about evidence that calls into question the subjective belief of the actor, such as we have here? And that's where Mr. Kappas' own admission that when she was walled off, he did not know whether that would address that concern. So if this case is allowed to stand, it would fundamentally change tort law in this area in Oregon and create unprecedented hurdles for plaintiffs in intentional interference cases. Thank you. What's your strongest evidence, counsel, or strongest case law support for your argument? There's a fair amount of confusion in the briefing because folks aren't always disciplined about just talking about the elements of the tort that was actually pled, and that creates some issues. But at the risk of compounding that, what I hear you to be saying is if Kimberly Clark had a mixed motive, in other words, if the jury were to hear evidence from which they could conclude that there was an intent to harm your client, but also could hear evidence from which they could conclude that Kimberly Clark had a concern about an ethics issue, maybe even not a very well-informed concern about an ethics issue, that that would not be enough. Or forgive me, that that would be enough for your client to prevail. What's your strongest case law authority for that? Yes. This is we don't have to show that the sole motive was an improper one. I know. That's the argument. My question is what's the support for that? Well. Which case tells me that? The the all of the all of the cases they cite are sole motive cases, and that would include Welch, Porter, McGinty, Giordino, and Straub. The only other one in which the plaintiff was required to prove sole motive was Toff Service, which in which the plaintiff assumed the burden in the pleadings of that and didn't object to the instructions on that. But apart from that, even and even in the sole motive cases, under Meckham, Harm, and Giordino, the jury is still a jury question. If there's evidence of both an illegitimate and a legitimate motive, then it's a jury question as to whether or not the actor acted for the legitimate, illegitimate, or both. And so that is our position on that. Any other questions for the Court? Thank you. Good morning, Your Honor. My name is Andrew Cleveland, and I appear on behalf of Kimberly-Clark Global Sales LLC. The district court was correct when it granted summary judgment in favor of Kimberly-Clark on plaintiff's claim of intentional interference with economic relations. Indeed, far from interfering with plaintiff's employment, Kimberly-Clark's Why isn't there a jury question here if, based on her declaration or testimony, I'm sorry, that, based on what Mr. Capes told her after this unusual meeting that occurred that was set up by the law firm at the beginning? Several reasons. And to look at the particular facts of that particular settlement conference, I think there are a lot of facts that indicate why there was not an improper purpose for Kimberly-Clark. First of all, as the magistrate judge found and as the district court found, the mere fact that Kimberly-Clark was meeting with the plaintiff to discuss a possible resolution of this issue, to try to avoid and solve the conflict of interest, demonstrates by itself that Kimberly-Clark did not have an ill will here. It was not trying to injure the plaintiff or harm the plaintiff. It actually demonstrates a constructive, proper, positive attitude towards trying to resolve her claim. But what about what she said? The meeting itself, perhaps, but I'm interrupting your judgment. But what about what she says Mr. Capes said to her? And that is about what I was about to address, Your Honor. All right. Go ahead. With respect to the comments that were supposedly made at the meeting, you correctly point out, Your Honor, that the only witness in this proceeding who has testified that those things were said were the plaintiff. Second. Well, but at summary judgment, there's not going to be a finding that those things weren't said, right? Correct. That's the only disputed issue. That's correct. And we look at the court's supposed to look at the fact the light was favorable to the plaintiff. Correct. And to take those allegations as true, what she said, they don't even still constitute a threat. They do not constitute an interference. Tell me why. What they do constitute is an observation that absent a settlement of this matter, Kimberly-Clark would still have a conflict of interest with Banner and Witkoff. There would still be one. And so there would have to be a dialogue between Kimberly-Clark and Banner and Witkoff to try to resolve it. Well, it raises inferences. And so can't both be true? I mean, you might have two reasons, but isn't then that enough to take it to the jury to say, hey, there's two? They give a very good reason also why she was terminated. I mean, I think everybody can understand this conflict issue. It's real. But if that's the real reason, somehow that supersedes her suspicion and what she's alleged here of what really was happening. What's their authority on that? Pardon me? Is there authority on that? No, Your Honor. I think what we need to look to is then what happened following the settlement conference, because in order for there to be some sort of interference with her economic relationship, that communication would have then had to have been conveyed to Banner and Witkoff by Mr. Kappas. And the evidence in the record is simply that following the settlement conference, a few weeks following it, as an aside, in a separate conversation about another case, Mr. Kappas of Kimberly-Clark talked to Mr. Cooperman of Banner and Witkoff and said, sorry, we weren't able to settle that case and I'm disappointed. That's it. There is no other reason. How come there is so little in the written record in this case? I've found that interesting. It seems a bit odd that a routine business matter, or I don't know, say even a routine, this kind of a business matter was handled solely by word of mouth between two close longtime friends and former colleagues. Does that not raise any inference? No, Your Honor, I don't think so. This happens every day where clients discuss with their outside counsel potential issues, there's a dialogue, and the counsel contemplates it, tries to address the issue, and gets back. And that's one of the factors that I think goes with it. But then it went to a board, I mean, and there's not a lot of written documents here. No, there's not, because it was an issue that needed to be raised between Kimberly-Clark and its outside counsel. It reflected a collaborative relationship between Kimberly-Clark and its outside counsel to try to come to a resolution of this matter without having to come to a set point at high noon where one would have to make a decision about whether further consequences would have to flow to Banner and Witkoff because it had a conflict of interest. And in fact, what the facts reflect here is that in December of 2009, Kimberly-Clark raised the issue with Banner and Witkoff. There was then a settlement conference in January. And then the decision to terminate was raised in March, or made in March of 2010, after the Banner and Witkoff firm received a letter from outside counsel that there was, in fact, a conflict of interest. During that whole period of time, there are really three communications about this matter. One, the fact that there was a potential conflict of interest. Two, that we'd like to meet with the plaintiffs to try to resolve this case. And three, to communicate to Banner and Witkoff that Kimberly-Clark was disappointed that such a thing couldn't occur. Everything else was Banner and Witkoff's, because it's their responsibility to try to resolve the conflict of interest. And we're not going to do that. But, counsel, at the settlement conference, the allegation from the plaintiff is that when they weren't successful in reaching a resolution, which I'm sure was forgettable all the way around, that your client told her that there was some concern because about the future, that this might have some kind of an impact on the firm's relationship with one of its major clients. I think the word is that I would need to speak with Banner and Witkoff, because it may have consequences on the relationship between Banner and Witkoff and Kimberly-Clark. And that is, in fact, the case. If there's a conflict of interest that cannot be resolved, it may, in fact, have a bearing on the relationship between the client and its counsel, because the client cannot tolerate the existence of a conflict of interest. That's certainly within the right of the client to make that sort of demand. Right. And so the question just goes back to Judge McGeeh's question, and I think Judge Pregerson's as well, why isn't this a jury question, particularly because I can't find anywhere in the record why that there was ever any discussion about Kimberly-Clark coming to the conclusion that the wall was going to be inadequate to address the ethical concern. Is there – did I miss it? Is it in the record? No, Your Honor. That's correct, Your Honor. Two points. First, with respect to the ethical wall, there's no obligation for a client to accept an ethical wall as a resolution of a conflict of interest. That may be a way to resolve it, but there's no obligation for the client to accept that as a resolution. Second of all, there's no jury question here, because under Oregon law, and as the district court explained by reference to the evidentiary standards in Title VII cases, in order to survive summary judgment in a case like this, the plaintiff has to bring forth evidence to show that the defendant's proffered business reason was not, in fact, the reason. It's not enough to say that the defendant's proffered business reason is incorrect or wrong. They have to show that the reason is so pretextual. Well, but I understand that, but here we have two potential reasons, one proper and one maybe not so proper, based on this discussion at that initial meeting. So I'm just back at this point that I was – I think I was earlier when I was asking your opposing counsel, if we have that kind of a situation, doesn't it go forward to the jury? No, Your Honor, because there's no evidence that shows that Kimberly-Clark acted with an improper purpose, because the proper purpose that was articulated here, that there's a conflict of interest, is a legitimate reason to be a legitimate business interest to pursue. As Kimberly-Clark sought, in the words of the Oregon Supreme Court in Top Service Body Shop, as long as Kimberly-Clark was pursuing a business interest as it sought, it was a legitimate business purpose. What if there were both? You just said two things, counsel. One is that your client had a legitimate interest because there was a concern about an ethical violation that you want us to accept, and I do accept was legitimate. And even if it was incorrect, ultimately, which we don't really know, because there were conflicting opinions about that, even if there was no answer about, you know, your position seems to be Kimberly-Clark had a legitimate reason. And what Judge McGeer and I think all three of us are asking is, why is that enough? Why isn't it a jury question if a jury could find from the other part of the evidence, the comments made at the settlement agreement, settlement conference, that Kimberly-Clark also had an improper purpose? As a matter of law, is it your position that that would not be enough? Two things. If there's a mixed motive, if a jury were allowed to infer a mixed motive, and we don't believe there is because the improper purpose standing alone, the proper purpose standing alone is enough. If there were a mixed motive, however, we believe that Oregon law, and it's cited in our brief, says that it doesn't matter. Prosseur on torts, for example, says, for example, that if there's an addition of spite to the motive of the defendant, that itself doesn't typically create liability. But second, I look to the recent Supreme Court case out of Southwest Texas Medical, which says in any mixed motive case, you still have to show that the improper purpose was a but-for cause of the supposed adverse event. And the cause of action here is intentional interference with economic relations. Correct. But you still have to show causation, and there's still but-for causation, which means the plaintiff has to show that but for the improper purpose, assuming one existed, that she would not have been terminated. And that's not at all clear from the record. There's nothing in the record, in fact, that says that if she had maintained her lawsuit against Kimberly-Clark and Kimberly-Clark hadn't had communications with Banner and Witkoff, that she would have still maintained her position. Suing a firm client or a subsidiary of a firm client is not typically very good for an associate's career in a law firm. Right. So focusing, and I appreciate you focusing on the elements for the cause of action that was actually pled, your argument is that she, as a matter of law, couldn't show causation because Kimberly-Clark had another reason. Correct. They had a good reason. They had a proper reason. And the proper reason being the pursuit, a resolution of a conflict, of a resolution of a conflict of interest. Because your position is that on the record, on the evidence, that she couldn't show that that was not a legitimately held concern. Correct. All she did was she brought forth the opinion of an expert who said that because there was no conflict of interest through her maintenance of a personal injury action against a firm client, that there must be a jury question. That's wrong. The district court got it right. It matters not whether the reasons underlying or animating Kimberly-Clark's conduct were correct or not in some platonic or ideal sense. What matters is that they were held in good faith, that they were sincere. And the fact that an independent law firm, Vorey Sater, independently concluded that there was a conflict of interest through these circumstances demonstrates, standing alone, that Kimberly-Clark's intentions here were sincere, that they were held in good faith. Well, opposing counsel's counter to that is that, you know, he points me to your client's deposition testimony, where I think it says deposition testimony, where your client said he wasn't really sure if the ethical wall would have satisfied his concern. What do we do about that? He did say in the deposition that he wasn't quite sure that the ethical concern satisfied the problem, because he was also concerned that the fact that a lawyer for one of Kimberly-Clark's outside counsel was actually suing the company might do harm to Kimberly-Clark in the litigation. For example, it might be introduced at trial. It might be used against them in settlement negotiations. That fact might be used by the plaintiff's bar to troll for additional clients with the argument of, look, one of their own lawyers is even suing them. Those were all the concerns that arise out of the fact that one of Kimberly-Clark's own lawyers was or someone associated with Kimberly-Clark's lawyers was suing them. And that was the concern that Kimberly-Clark had, and it motivated his actions here. Ginsburg. One of two, right? One of two, correct, both the conflict of interest and the adverse litigation effect from that. With respect, one other thing I would like to add here is the fact that there are several undisputed Was mediation tried or considered? We attempted a mediation at the appellate level, Your Honor, not before the district court. So after the district court issued its summary judgment, we did sit down to try to address this issue. Or are you speaking of even sooner before that, before the lawsuit was even filed by the plaintiff? We did not discuss any attempt to mediate. We did try to settle with the plaintiff in February of 2009, but her demands were not acceptable to us. One thing I do want to underscore is just the number of facts that really do stand undisputed and uncontested here. And one of them is the fact that the law practice is so complicated these days. You know, I was a lead partner in a two-person law firm, see, so I never had to encounter these problems. But today, law firms in L.A. where there were 90 members of now lawyers, now they've got well into the thousands. They're all over the world. They've got subsidiaries hanging like grapes on the vine. And so there has to be some way of blocking it off or working out a system where people can continue to work. You may have a lawsuit against some remote subsidiary or whatever, but you hear about walls being set up. I agree, Your Honor. These days, the walls, their waivers, there are all kinds of devices that seem to satisfy folks. There may be, Your Honor, but it's not an obligation of the client to accept those under the professional rules of responsibility. Nor, might I add, one other point about this is that the record's clear that at no point in time did Kimberly-Clark ever demand, direct, suggest, intimate or hint to Banner and Witkoff that they needed to terminate Banner and Witkoff, to terminate Plano. Right. Nor am I. My only point, Your Honor, is that in this case, we never really got to the point where you needed to have that decision made of, well, would a wall be sufficient? Would a wall not be sufficient? Is there some alternative method here? Because the fact of the matter is that what Kimberly-Clark did was it notified Banner and Witkoff of the issue, of the circumstance. At that point in time, it's Banner and Witkoff's issue to try to resolve, and it decided how to resolve it, and it chose to terminate her. Kimberly-Clark didn't make that demand. It didn't put some threat to Banner and Witkoff to say, if you don't take an adverse employment action, you're going to lose your job or you're going to lose business from us. Nothing of that happened here at all. All that happened was Kimberly-Clark notified them of the conflict and that that was not something that they would be willing to tolerate. If the Court has no further questions. Breyer, and that relationship still goes on. It still goes on, yes, Your Honor. If the Court has no further questions, I see my time is up. Let me just ask, mediation was referenced and apparently you all tried to settle this, but what are your client's damages here? Pardon? What are your client's damages here? The damages would be the damages based on the difference between what she would have continued to earn at Banner and Witkoff and what she earned in the interim to the time of trial. Well, it looks from the record she got a job paying the same salary after less than a month. Is that correct? There were some other differences in benefits and there was a cessation of that employment later on, and so there are other economic damages. There is also the emotional distress that was associated with that interference and displacement as well. Just very briefly, counsel indicated that there is no evidence of improper purpose. Retaliation is an improper purpose under Oregon law, and that's Boers and Houston. He indicated that we proceeded in good faith, we didn't threaten. The tenor and tone of the meeting at which he suggested that she get a job, that she give away her case for nuisance value belies that characterization. These are jury arguments. A jury should be allowed to hear them. Counsel, isn't his strongest argument that your client had the burden and couldn't show that his client didn't, in addition to what you argued was an improper purpose, may have had a proper one, a legitimate one, a concern that in future litigation it might come out that one of Kimberly Clark's lawyers was suing him. What's wrong with that argument? I'm sorry. I missed the first part of your question, Your Honor. I'm competing with a jackhammer outside. Sorry. I'm sorry. His argument is that even if you, a jury, could have inferred that there was an incorrect and improper purpose, an intent to retaliate against your client, that you weren't able to shake his evidence that his client also had a legitimate concern, two of them. One is the ethical concern, but the one that is, I find, more interesting. Is the concern that they stated from the beginning, that Kimberly Clark didn't want one of its own lawyers suing it because that could come out in future litigation. Well, the problem is, if that was their only intent, then that would be one thing. And then we could show that that was not a sincere intent to help raise a question of fact about improper purpose. But we proved a retaliatory intent. And why isn't it, why isn't it that what you proved that they were, I mean, his argument is that Kimberly Clark was looking out for Kimberly Clark, a legitimate business interest, and they took actions to do that. And the fact that they may have very well been able to foresee that your client was going to be harmed in the meantime isn't enough. The problem with his argument is you don't have to have both. That was the error in the court below. If you have evidence of retaliatory intent, you don't have to also disprove every claimed legitimate. To disprove the sincerity of the claimed illegitimate intent is to prove indirectly by circumstantial evidence that there is retaliatory intent. We had direct evidence of retaliatory intent, so we didn't need to do that, although we had evidence that that was not sincerely held because of evidence such as what the court asked counsel about, which was he wasn't sure after she'd been walled off whether or not that would address the concern. That attacks that sincerity of that belief. So you think that the error of law that was made below was this, was the notion that showing an improper purpose, introducing evidence from which a jury could find improper, you know, retaliation wasn't enough? We – it was error for the court below not to recognize that in the face of evidence of a retaliatory intent, you didn't need to also attack each claimed legitimate reason. It was error for them not to recognize that we had such evidence, even if it was required. It was error for them to establish these new unprecedented standards that to attack the legitimacy of the belief, you have to do so by clear evidence that is subjectively unreasonable. That's unprecedented. There's no law to support that. As far as the court below. I think I did that. My apologies. I'm sorry, Your Honor. I'm sorry, Your Honor. I apologize. Because that's where all the power is. I understand. I take your point. Counsel also indicated that. What is the status of the lawsuit involving this after acquired subsidiary? It has been resolved is my understanding. That's correct, Your Honor. The. That was Senator. Pardon? I believe it has been resolved. I'm not sure about any confidentiality obligations. And so I would not want to say anything more than that. I did not handle that myself. I'm just an employment guy. As far as his point that at no time did we suggest that she be terminated, he said on more than one occasion that she should be terminated. On more than one occasion, we can't have one of our outside attorneys suing Kimberly-Clark. What is the takeaway from that? Either she drops her case or she can't be one of our attorneys. So, if there are no other questions, thank you, Your Honors. All right, thank you, and this matter is submitted.
judges: Pregerson, Murguia, Christen